36 P.3d 663 (2001)
D.J., Appellant,
v.
P.C., Appellee.
No. S-9470.
Supreme Court of Alaska.
December 5, 2001.
*665 Alex Koponen, Fairbanks, for Appellant.
Daniel L. Callahan, Schendel & Callahan, Fairbanks, for Appellee.
Before: FABE, Chief Justice, and MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

OPINION
MATTHEWS, Justice.

I. INTRODUCTION
D.J., currently serving a twenty-year sentence, appeals from a superior court order terminating his parental rights to his son J. D.J. argues that the superior court erred in granting summary judgment to J.'s grandmother, P.C., who petitioned to adopt J. D.J. alleges three errors by the superior court: first, that the court erred by granting summary judgment on the question of whether he was unreasonably withholding his consent *666 to J.'s adoption; second, that the court erred in determining that the Indian Child Welfare Act[1] (ICWA) did not apply to the termination of his parental rights; and third, that the court erred by finding that the termination requirements of ICWA were satisfied. Because the superior court failed to apply ICWA correctly in terminating D.J.'s parental rights, we vacate the termination and remand for proceedings consistent with ICWA.

II. FACTS AND PROCEEDINGS
J. was born May 16, 1992, to F.C. and D.J. J. is an Indian child as defined by the Indian Child Welfare Act of 1978.[2] His mother is a member of the Devil's Lake or Spirit Lake Sioux Tribe in North Dakota. His father is a member of the Native Village of Barrow. In 1995 J.'s mother placed him with her mother, P.C., who had been helping to care for J. since his birth. Since that time, J. has been in the exclusive care of P.C. P.C. is also a member of the Devil's Lake or Spirit Lake Sioux Tribe.
J.'s father, D.J., is currently incarcerated at the Spring Creek Correctional Facility, where he is serving a twenty-year sentence for attempted murder. He was sentenced on December 5, 1997. D.J. has never resided with his son, nor has he ever had unsupervised custody of J. D.J. has a long history of criminal activity, convictions, and incarceration.
In March 1996 P.C. petitioned the superior court to approve her adoption of J.J.'s mother consented to the adoption in early April 1996. The court issued a notice of dismissal of the adoption petition for lack of prosecution on January 8, 1999. P.C. objected to dismissal, claiming that she had sought but was unable to obtain D.J.'s consent to her adoption of J.
In May 1999 an adoption hearing was held. D.J. participated via telephone from Spring Creek Correctional Facility. He objected to P.C.'s adoption of J. and requested the appointment of counsel. Counsel was appointed to represent him on June 10, 1999, and trial was scheduled for October 7-8, 1999.
On June 28, 1999, P.C. filed an amended petition for adoption indicating that she was married to Mr. S. and that in May 1999 J.'s mother had again consented to the adoption. On August 19, 1999, P.C. filed a motion for summary judgment, arguing that D.J.'s consent to her adoption of J. was not necessary and that his parental rights could be terminated under AS 25.23.180(c)(2)[3] and 25 U.S.C. §§ 1901-1963.[4] In her memorandum in support of summary judgment, P.C. claimed that she had cared for and supported J. for his entire life and had done so exclusively since December 1995. She also asserted that J.'s mother and father had never married and "there was never a custody or visitation order entered between them related to the child." She alleged that D.J. had never enjoyed a meaningful relationship with his son, never had custody of him, had only visited with J. a few times during the child's life, and had never cared for the child overnight or even had exclusive care of the child for a short visit. She asserted that "[t]he child has no meaningful relation to [D.J.] except to know [D.J.] is his father."
P.C. argued that D.J.'s withholding consent to her adoption of J. was unreasonable in light of the fact that he never had any parental involvement with J. and will spend J.'s childhood incarcerated. She argued that his continued incarceration and unavailability ever to parent J. during his childhood render D.J.'s refusal to consent to her adoption of J. unreasonable. P.C. supported her motion *667 with her own affidavit and D.J.'s criminal record.
D.J. filed a letter with the court on August 23, 1999, alleging that his attorney failed to answer his calls, hung up on him, and did not perform any work on his case.[5] On September 16, 1999, J.'s guardian ad litem filed his report with the court, stating that the adoption was in the child's best interest and that D.J.'s refusal to give consent was not in the child's best interests. The guardian ad litem noted that D.J. had told him that he did not object to J. living with P.C., but that he did not want her to adopt J. The guardian ad litem suggested that leaving J. in legal "limbo" was contrary to the child's best interests.
D.J. was appointed a new attorney on October 8, 1999. His new attorney encountered difficulty obtaining permission from the prison to speak with D.J., but was able to file a response to P.C.'s motion for summary judgment on October 21, 1999. That response indicated D.J.'s opposition to summary judgment on the grounds that he believed P.C.'s husband was an alcoholic and a sexual predator and that therefore his refusal to consent to P.C.'s adoption of J. was reasonable. He asserted that his allegations raised questions of material fact regarding both the reasonableness of his refusal to consent to adoption and J.'s best interests, which precluded summary judgment. D.J. did not file any affidavits or other admissible evidence in support of his opposition to summary judgment.
On November 5, 1999, the standing master filed her report, recommending that the superior court determine whether the issue of a parent unreasonably withholding consent to adoption was susceptible to summary judgment, and if so, to find in favor of P.C. The master recommended, in the alternative, that the superior court permit D.J. sufficient time to file affidavits or other admissible evidence in support of his opposition to summary judgment.
On November 29, 1999, the superior court granted summary judgment to P.C. The court found that there was no genuine issue of material fact as to whether D.J.'s parental rights could be terminated under AS 25.23.180(c)(2). The court found that D.J. does not have custody of J. and that D.J. was unreasonably withholding his consent to P.C.'s adoption of J. and concluded that D.J.'s parental rights could be terminated. The court also found that there was no issue of material fact concerning whether D.J.'s parental rights could be terminated under ICWA. The court found that P.C. was J.'s Indian custodian for purposes of ICWA[6] and that, therefore, § 1912 of ICWA did not apply to the termination of D.J.'s parental rights. The court found, in the alternative, that if § 1912 did apply, the evidence showed beyond a reasonable doubt that J. would suffer serious emotional or physical harm if D.J. continued to have custody of him, and that § 1912(d)[7] had been complied with "to the extent necessary, under the circumstances of this case." The summary judgment order terminated D.J.'s parental rights to J. On December 17, 1999, the standing master heard P.C.'s adoption petition. D.J. was precluded from participating because his parental rights had been terminated. The superior court left it to the guardian ad litem to investigate the suitability of P.C.'s home in light of D.J.'s assertions that P.C.'s husband posed a threat to J.
D.J. now appeals.

III. STANDARD OF REVIEW
Issues not raised in the trial court shall not be considered on appeal, except for *668 plain error.[8] Plain error exists "where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[9]
This court reviews a trial court's grant of summary judgment de novo.[10] Summary judgment is appropriate "only if the record presents no genuine issues of material fact and the moving party was entitled to judgment on the law applicable to the established facts."[11] Where the parties dispute the facts, the non-movant's version is presumed correct.[12] All reasonable factual inferences must be drawn in favor of the non-movant.[13]
Whether ICWA applies to a proceeding is a question of law to which this court applies its independent judgment.[14] This court will "adopt the rule of law that is most persuasive in light of precedent, reason and policy."[15]

IV. DISCUSSION

A. The Superior Court Did Not Err in Granting Summary Judgment on Whether D.J. Unreasonably Withheld His Consent to J.'s Adoption.

1. It was not plain error for the court to fail to extend the deadline for D.J. to respond to the summary judgment motion.
D.J. contends that he was not granted sufficient time to respond to P.C.'s motion for summary judgment. This issue was not raised in the trial court. As such, we review D.J.'s argument only for plain error.[16]
D.J. points out that his second attorney was appointed just prior to the trial setting conference held on October 20, 1999, and shortly before his response to P.C.'s motion for summary judgment was due. He suggests that he did not have time to oppose summary judgment effectively and that the court erred in failing to grant him more time.
In view of the circumstances, however, it was not plain error for the court to fail to extend, sua sponte, the deadline for D.J. to respond to the motion for summary judgment. Although it appears that D.J. did not receive adequate representation from his first court-appointed attorney, he was appointed substitute counsel, who represented to the court that he would timely file a response to the motion for summary judgment, and in fact did so one day before the response was due. D.J. did not include any affidavits or other evidence in his response to summary judgment, nor did he request an extension. He does not argue that there were issues he would have addressed more thoroughly or for which he would have provided evidence had he been given more time. It was not plain error for the trial court not to extend the deadline for summary judgment.

2. The trial court did not err in finding that there were no material disputes of fact regarding whether D.J. unreasonably withheld his consent to J.'s adoption.
D.J. argues that the court erred in granting summary judgment on the question of the reasonableness of his refusal to consent to J.'s adoption and on the issue of J.'s best interests. D.J.'s arguments regarding both the reasonableness of his withholding consent and J.'s best interest rely on D.J.'s *669 allegation that Mr. S., P.C.'s husband, is an alcoholic sexual predator. D.J. does not dispute any of P.C.'s assertions: that he has never had meaningful involvement in J.'s life, does not object to J. living with her, and will not be available to parent J. during any part of J.'s minority.[17]
D.J. has not produced, or even suggested the existence of, admissible evidence that would support his argument that Mr. S. is an alcoholic sexual predator. Instead, he merely describes Mr. S. in his brief as someone "who is thought to be an alcoholic sexual predator."
In summary judgment cases, if the movant shows that she is entitled to judgment as a matter of law on the established facts, the non-moving party must demonstrate that a genuine issue of fact exists.[18] The non-movant must present admissible evidence to the court to meet his burden of raising a material issue of fact.[19] The non-movant is "required, in order to prevent entry of summary judgment, to set forth specific facts showing that he could produce admissible evidence reasonably tending to dispute or contradict the movant's evidence, and thus demonstrate that a material issue of fact exists."[20] "Assertions of fact in unverified pleadings and memoranda are insufficient to defeat a motion for summary judgment."[21]
Although whether P.C.'s husband is an alcoholic sexual predator is clearly relevant to determining J.'s best interests and whether D.J. is reasonably withholding consent to J.'s adoption, D.J. has failed to do more than make "[a]ssertions of fact in unverified pleadings and memoranda."[22] He has thus failed to raise a genuine issue of material fact regarding either the unreasonableness of his withholding consent to J.'s adoption by P.C. or J.'s best interests.[23] We therefore affirm the court's grant of summary judgment on state law grounds.

B. The Superior Court Did Not Comply with ICWA.
J. is an Indian child as defined by ICWA. The superior court found that because P.C. was J.'s Indian custodian,[24] the provisions of § 1912 of ICWA regarding the termination of parental rights did not apply to the termination of D.J.'s parental rights to J. The trial court found, in the alternative, that if § 1912 did apply, its termination provisions were satisfied. D.J. challenges both findings, arguing that § 1912 did apply to the termination of his parental rights and that its provisions were not satisfied.
As an initial matter, we note that the termination of parental rights subject to § 1912 of ICWA involves higher evidentiary standards and different protections of the rights of the parent subject to termination than do termination proceedings strictly under state law. Subsection 1912(d) of ICWA demands:
Any party seeking to effect a . . . termination of parental rights to ... an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
Subsection 1912(f) requires a determination, "supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."
*670 "Continued custody" under § 1912(f) refers to legal custody as well as physical custody.[25] J. is an Indian child and D.J. is his father. Prior to the termination of his parental rights D.J. had not been divested of his legal custody of J.[26] Section 1912's termination provisions therefore appear to apply to the termination of D.J.'s parental rights to J., and P.C. bears a heavy burden to show that they should not be literally followed.[27]

1. ICWA applies to the termination of D.J.'s parental rights.
The court based its finding that § 1912 of ICWA did not apply to the termination of D.J.'s parental rights on its identification of P.C. as J.'s "Indian custodian." P.C. argues that D.J. waived the right to challenge this finding because he did not raise any issues under ICWA below. We reject this argument.
The trial court was apprized of the child's status as an Indian child under ICWA,[28] and was thus aware that the termination of D.J.'s parental rights was a child custody proceeding within the meaning of ICWA.[29] Moreover, ICWA had been raised throughout the proceedings, including in the petition for adoption, which alleged that "grounds exist under. . . § 1901, et seq. to dispense with [D.J.'s] consent." Although P.C. argued in her motion for summary judgment that because she was J.'s Indian custodian, D.J. was not entitled to ICWA's heightened protections, she argued in her response to D.J.'s opposition to summary judgment that the "uncontested facts permit entry of judgment of termination of [D.J.'s] parental rights under . . . 25 U.S.C. § 1912(f)."[30] The question of whether ICWA's termination provisions applied in this case was therefore squarely before the court, and D.J.'s failure explicitly to raise it will not bar his appeal.[31]
P.C. contends that our opinion in J.W. v. R.J.[32] controls the application of ICWA to this case and demonstrates that § 1912(f) of ICWA did not apply to the termination of D.J.'s parental rights. In J.W., a child's father and stepfather, both Alaska Natives, each sought custody of the child following her mother's death.[33] The father argued that, before placing the child with her stepfather, the court had to comply with § 1912(e) *671 of ICWA, and find that there was clear and convincing evidence, including expert testimony, to show that serious emotional or physical damage would likely result to the child if she were placed with her father.[34] The stepfather argued that, if ICWA did apply, it provided him equal protection as the child's Indian custodian.[35]
In remanding for a finding as to whether the stepfather was the child's Indian custodian, we stated that such a finding would "squarely raise the legal question whether § 1912(e) applies reciprocally in a dispute between a parent and Indian custodian."[36] We opined that ICWA treats parents and Indian custodians as coequals, and that "[t]he purposes behind ICWA are consistent with restricting § 1912(e) to disputes between persons having favored status  parents and Indian custodians  and others who are neither parents nor Indian custodians." Applying that reasoning, we held that if the stepfather proved he was the child's Indian custodian, § 1912(e) would not apply and instead only state law regarding custody disputes would apply.[37]
P.C. urges us to find that the reasoning and policy behind J.W. regarding § 1912(e) control the question whether § 1912(f) applies reciprocally in a dispute between a parent and an Indian custodian. As P.C. points out, the language of § 1912(e) and (f) is identical except that subsection (e) concerns foster placement and requires only clear and convincing evidence, whereas subsection (f) concerns termination of parental rights and requires proof beyond a reasonable doubt.[38]
We stated in J.W. that "[n]o section of ICWA indicates that Congress preferred a parent to an Indian custodian if the parent did not previously have physical custody."[39] Rather, Congress's purpose in passing the Act was to protect the best interests of Indian children and to promote the stability, security, and integrity of Indian tribes and families.[40] It is therefore arguable that when Congress wrote § 1912(f), it was concerned not with disputes between Indian custodians and non-custodial biological parents, but rather with disputes between Indian custodians or biological parents and non-Indians. For this reason, it might be consistent with Congress's intent to hold that § 1912(f) does not apply to circumstances involving a noncustodial Indian parent and an Indian custodian.
However, the analogy is not as apt as P.C. suggests, and we are not persuaded to ignore the plain language of the statute in order to hold that § 1912(f) does not apply to the case at bar. First, the facts of J.W. and the instant case are not parallel. In J.W., § 1912(e) would not have been applicable to the custody dispute if the stepfather was the child's Indian custodian, because the statutory provision would protect both contestants equally, essentially rendering it moot.[41] Whether the trial court gave custody of the child to the father or the stepfather, the court would be effecting a removal of "an Indian child from its parent or Indian custodian"[42] and so vindication of one party's rights would directly and proportionally impair *672 the rights of the opposing party.[43] Subsection 1912(e) therefore had no analytical purpose in the custody determination.
By contrast, in the case currently before us, termination does not equally affect the rights of P.C. and D.J. If D.J.'s parental rights are terminated, then P.C. is free to adopt J. However, if she is unsuccessful in her efforts, she will not be deprived of the custody of J. which she currently has. Applying § 1912(f) to the termination of D.J.'s parental rights would not be meaningless.[44] The trial court in this case will not be required to determine whether continued custody by P.C. would likely result in serious emotional or physical damage to J., whereas in J.W., the trial court would have had to ask that question about both parties. Instead, the court will simply have to determine whether continued legal custody by D.J. would likely result in serious emotional or physical damage to J.
That the adjudication of D.J.'s parental rights takes place within the larger context of a dispute between a parent and an Indian custodian does not exempt this case from the framework and application of § 1912(f). Thus, although P.C. correctly contends that she and D.J. are considered coequal in the eyes of ICWA, the inapplicability of § 1912(f) to the termination of D.J.'s parental rights to J. does not follow.
Further, our decision in J.W. rested in part on ICWA's mandate that where a state or federal law was more protective of the rights of a parent or Indian custodian than ICWA, that law should be applied.[45] Where application of § 1912(e) would not have yielded a preference as between the father and stepfather in J.W., and state law provided higher standards, state law would apply.[46] P.C. asks us to apply J.W. to diminish the rights of D.J. under ICWA. This we decline to do.
As noted, the custody referred to in ICWA encompasses legal custody.[47] It appears from the record and P.C.'s brief that she does not have legal custody of J. Assuming, then, that D.J. has not lost his legal custody of J., the "continued custody" referred to in § 1912(f) applies to D.J.'s legal custody. Applying the plain language of § 1912(f), in order to terminate D.J.'s parental rights, the court must find that continued legal custody of J. by D.J. is likely to result in serious emotional or physical damage to him. P.C. has not articulated a sound reason why she should not in fact be required to establish this as provided for in ICWA. It is highly unlikely that Congress intended "Indian custodian" as used in § 1912(f) to refer to the party petitioning for termination. Rather, a natural reading of the section suggests that the petitioner is required to show that continued custody by the party against whom termination is sought would result in serious emotional or physical harm to the child.
We have addressed in other cases the applicability of ICWA in disputes between Indian family members over custody. In A.B.M. v. M.H., we refused to hold that ICWA did not apply to intra-family custody disputes.[48] In so doing, we recognized that Congress had explicitly excepted specific custody proceedings (those arising from divorce or juvenile delinquency proceedings),[49] suggesting that those not explicitly excepted were covered.[50] In A.B.M., a couple sought to adopt the wife's sister's child, and argued that ICWA *673 did not apply when the biological mother attempted to revoke her consent.[51] We rejected the argument that because the adoptive parents were Indian custodians, ICWA did not apply.
The language of § 1912(f) provides that in order to terminate a parent's rights the court must be satisfied by evidence beyond a reasonable doubt, including expert testimony, that continued custody of the child by the parent would likely result in serious emotional or physical harm to the child. Consistent with this language and with our opinion in A.B.M., we hold that ICWA applies to termination proceedings when a party other than the state seeks the termination, even when that party is an "Indian custodian" under ICWA. Accordingly, the trial court's decision not to apply the heightened protections of ICWA was erroneous.

2. The proceedings below did not satisfy § 1912.
In terminating D.J.'s parental rights, the superior court found that § 1912 of ICWA was inapplicable because P.C. was J.'s Indian custodian. The court made an alternative finding, determining that if § 1912 did apply, its requirements were satisfied. D.J. argues that this alternative finding was incorrect because P.C. did not make a prima facie showing satisfying the "proof beyond a reasonable doubt" standard and because no expert testimony was presented.
D.J. is correct. P.C.'s motion for summary judgment addressed "continued custody" as physical custody and did not make a prima facie showing that continued legal custody of J. by D.J. would result in severe emotional or physical damage to the child. There is no indication in the court's grant of summary judgment that it considered the effect of legal custody. In addition, the expert testimony requirement in § 1912(f) is clear and unambiguous. P.C. describes the expert requirement as "needlessly redundant" in this case. But we will not presume to dispense with a provision that federal law explicitly requires.
In light of D.J.'s anticipated period of incarceration, the trial court held that § 1912(d)[52] has been complied with "to the extent necessary, under the circumstances of this case." We have held that a parent's incarceration can diminish the level of active efforts required under ICWA.[53] However, incarceration does not eliminate the active efforts requirement of ICWA.[54] While it may be true that active efforts have been made, and that they have been unsuccessful, the trial court must make findings on these points.

V. CONCLUSION
We AFFIRM the trial court's grant of summary judgment to P.C. on state law grounds. We REVERSE the termination of D.J.'s parental rights because the court failed to comply with § 1912(d) and (f) of ICWA. This case is REMANDED for further proceedings consistent with this opinion.
FABE, Chief Justice, joined by CARPENETI, Justice, dissenting.
FABE, Chief Justice, with whom CARPENETI, Justice, joins, dissenting in part.
I respectfully dissent from Part IV.B of the court's decision today holding that the Indian Child Welfare Act (ICWA) applies in the present case. The court is correct to discuss J.W. v. R.J.[1] at length but misinterprets its precedential value for P.C., grandmother of J.P.C. is placed in substantially the same position as was the stepfather in J.W. *674 Thus, the case cannot be distinguished in the manner that the court suggests. Because P.C. is an "Indian custodian" under the requirements of ICWA,[2] there is no reason to favor awarding legal custody to D.J., the child's father, over P.C. In other words, P.C. and D.J. are on equal footing with regard to the custody of J. Consequently, the heightened proof requirements found in ICWA do not apply. I would apply the court's decision in J.W. to the present case and affirm the superior court's determination that ICWA does not apply to this case.
The court does not dispute the assertion that P.C. is J.'s Indian custodian. ICWA defines an "Indian custodian" as "any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such child."[3] By virtue of his birth to a mother who is a member of the Devil's Lake Sioux Tribe and a father who is a member of the Native Village of Barrow, J. is an Indian child under ICWA.[4] P.C. is an Indian member of the Spirit Lake Sioux Tribe. J.'s mother gave P.C. physical custody of J. on December 1, 1995; J. has been in the care of P.C. ever since. Consequently, P.C. is J.'s Indian custodian because she is herself Indian and has been granted physical custody of J. by his mother.
Because P.C. is J.'s Indian custodian, she has the same right to legal custody of J. as D.J. does. In J.W., we held that a parent and Indian custodian are treated as "coequals" under § 1912(e) of ICWA.[5] Though § 1912(f) addresses termination of parental rights, as opposed to the requirements for foster placement found in § 1912(e) that were litigated in J.W., the only other difference between the wording of the statutes is found in the standard of proof.[6] The majority interprets § 1912(f) to create an asymmetry in parental rights not found in § 1912(e).[7] It concludes that § 1912(f) requires a finding only that continued custody by D.J. would likely result in serious emotional or physical damage to J. but that under § 1912(e) this question would have to be asked of both parties.[8] This interpretation is incorrect. Just as in § 1912(f), § 1912(e) establishes the requirements for depriving an individual parent of custodial rights over a child. Contrary to the portrayal by this court in the present case, § 1912(e) is not the balancing of interests that might otherwise take place between two presumed-equal parties in a custody hearing. Instead, as J.W. held, this ultimate determination of custody between two parties claiming parental rights is to take place not under ICWA but under state law.[9]
In J.W., we held that in custody disputes between a parent and a stepparent, Alaska law gives preference to the custodial rights of a parent; the "best interests" of the child standard found in custody disputes between two parents does not apply.[10] We could only reach this holding in J.W. under the presumption, to be determined upon remand, that the stepfather was the child's Indian custodian and so state law rather than ICWA applied.[11] We held that if the trial court *675 determines on remand that the stepfather is the child's Indian custodian, then § 1912(e) will not apply and the superior court should instead apply the Alaska standard for custody disputes between parents and non-parents. If he is not deemed to be the Indian guardian, § 1912(e) would apply and the stepfather would have to show "by clear and convincing evidence" that continued custody of the child by the father would likely result in harm to the child.[12] This contradicts the court's conclusion in the present case that this question would only be asked of D.J. in a hearing under § 1912(f) but of both parties in a hearing under § 1912(e).[13] The determination of likely future harm is asked in both instances only of the party whose rights are being terminated. In other words, J.W. cannot be distinguished from the present case in the way suggested by this court.
The court today concludes that there is a further asymmetry between § 1912(e) and § 1912(f) in the effect that each statute has on the parental rights of the parties involved. The court reasons that regardless of who prevailed in a § 1912(e) hearing in J.W., "the court would be effecting a removal of `an Indian child from its parent or Indian custodian,'"[14] whereas in a hearing for termination of D.J.'s parental rights, the parental rights of P.C. are not adversely affected. Again this court conflates state custody processes with those required by ICWA. The finding that "the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child"[15] focuses on the future parental rights of only one parent in both § 1912(e) and § 1912(f). The statutory requirements of ICWA do not explicitly address the balancing of parental rights between two parties, which can only take place under state law, but rather establish the standard of proof for adjudication, be it of foster placement or permanent termination of parental rights.
Both § 1912(e) and § 1912(f) result in removal of a child from unrestricted access by the parent. Under 25 U.S.C. § 1903(1)(i), "foster care placement" is defined as "any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated." This section therefore contemplates the deprivation of parental rights, albeit in a less severe form than outright termination of parental rights. However, there is nothing in the language of § 1912 to suggest that foster care placement is to have any different procedural treatment than the termination of parental rights. Indeed, both are treated the same under § 1912(d), which requires the state "to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family" for both foster care placement and the termination of parental rights. By implication, if the two statutes are to be treated the same procedurally, there should be no difference in the way the parental rights derived from them are construed.
Contrary to today's holding by the court, the parental rights of P.C. are no less deprived by losing a § 1912(f) hearing if ICWA is found to be applicable, than would be the rights of the stepfather in J.W. under ICWA § 1912(e) if he is not able to show that he is the child's Indian guardian. The court notes that ICWA addresses legal custody and that P.C. does not have legal custody of J.[16] Yet, *676 it was precisely legal custody of the child that was at issue in J.W.[17] Consequently, losing her case would deprive P.C. of her rights to legal custody in just the same way as the stepfather's legal custody rights would be affected in J.W. In short, there is no analytical difference between § 1912(f) and § 1912(e) that would preclude application of J.W. to the present case.[18]
We held in J.W. that "[n]o section of ICWA indicates that Congress preferred a parent to an Indian custodian if the parent did not previously have physical custody."[19] The language of § 1912(f) requires a finding of likely damage to the child if "continued custody" is allowed to the parent or Indian custodian.[20] The use of the word "continued" implies some pre-existing relationship between the parent or Indian custodian and the child, though not necessarily physical custody at the immediate time of the custody hearing. This is the interpretation implicitly adopted in J.W. Inasmuch as ICWA is meant "to promote the stability and security of Indian tribes and families,"[21] there must be reasonable grounds for believing that the parental relationship is worth promoting. Limiting the application of this exception to ICWA to disputes between a parent and an Indian custodian ensures that the child's Indian heritage will be protected and thus brings these situations within the goal of ICWA to promote Indian tribes. The focus of the exception to ICWA that this court established in J.W. is not so much cultural as it is an examination of the specific parent-child bond at issue. This court should follow J.W. to hold that where a parent has no pre-existing relationship with the child, other than some default form of legal custody,[22] that parent cannot be entitled to the protections of ICWA so long as the child resides with an Indian custodian.
D.J. does not have the type of parental relationship that ICWA was meant to protect. It is certainly the situation that D.J. has not previously had physical custody of his son. D.J. has never resided with J. and has had only sporadic contact with J., never for more than forty-five minutes. Furthermore, D.J. will remain incarcerated for the entirety of J.'s minority. As we pointed out in J.W., the preference in § 1912(e) is for custody "by the parent or Indian custodian" and does not differentiate between the two.[23] The same language is contained in § 1912(f), implying that there is equal preference expressed there as well for both a parent and an Indian custodian. P.C. has been the Indian custodian for J. since he was three and *677 had helped care for him practically since his birth. The best way to further ICWA's expressed purpose "to promote the stability and security of Indian tribes and families"[24] in the present case is to instruct the trial court on remand to consider as equal, at least for the purposes of ICWA, the legal rights to custody of both P.C. and D.J. This was the conclusion reached in J.W.:
The purposes behind ICWA are consistent with restricting § 1912(e) to disputes between persons having favored status  parents and Indian custodians  and others who are neither parents nor Indian custodians. There would appear to be no logical reason consistent with the statutory purpose to apply § 1912(e) in a contest between two equally favored contestants. We therefore hold that if the stepfather proves on remand that he is S.R.'s Indian custodian, § 1912(e) will not apply and the superior court should instead apply the Alaska standard for custody disputes between parents and non-parents . . . .[25]
A decision holding that ICWA does not apply to situations where the parent has no pre-existing significant relationship with the child is consistent with decisions in other jurisdictions. The Supreme Court of Kansas held in In re Adoption of Baby Boy L. that ICWA did not apply where the child in dispute had "never been in the care or custody of the putative father."[26] The court concluded that the intent of Congress was the protection of Indian families and that the father, due to his lack of contact with the child, did not constitute an Indian family meriting protection.[27] The Missouri Court of Appeals, following Baby Boy L., held in In re S.A.M. that a father who did not even know of the existence of his daughter until she was seven years old could not invoke ICWA because he did not have the "continued custody" of his daughter that ICWA was meant to protect.[28] In a case with a fact pattern quite similar to the present one, a Michigan court held that ICWA did not apply; consequently, active efforts at rehabilitation did not need to be made under § 1912(d), where the children were living with their Indian mother and where the father did not engage in parenting the children.[29] The father in that case had *678 moved away and had not provided any financial support for the children for almost two years.[30] Furthermore, at the time of trial the father was imprisoned for four to ten years and could not participate in the upbringing of his children.[31] As such, the family breakup that ICWA was meant to prevent "was already a fait accompli."[32]
These cases from other jurisdictions, along with our holding in J.W., support the conclusion that D.J. cannot invoke the protections of ICWA in his custody dispute with P.C.[33] D.J. has never been a parent to J. Furthermore, his incarceration prevents the possibility that he will be a part of J.'s life prior to J. reaching maturity. J. currently resides with P.C., the Indian custodian who has cared for J.'s needs for the last several years. Under these circumstances, D.J.'s right to legal custody of J. falls outside of anything that Congress could have meant to protect in passing ICWA. Consequently, the superior court decision to terminate D.J.'s parental rights on state law grounds should be affirmed.
NOTES
[1] 25 U.S.C. §§ 1901-1963 (1978).
[2] See 25 U.S.C. § 1903(3), (4).
[3] AS 25.23.180(c)(2) states:

The relationship of parent and child may be terminated by a court order issued in connection with a proceeding under this chapter or a proceeding under AS 47.10 on the grounds
. . . .
(2) that a parent who does not have custody is unreasonably withholding consent to adoption, contrary to the best interest of the minor child.
It is questionable whether AS 25.23.180(c)(2) applies since it appears that D.J. did not give up legal custody of J. and it was never taken from him by adjudication. If true, he is not a parent "who does not have custody" of his child.
[4] The Indian Child Welfare Act of 1978 (ICWA).
[5] D.J.'s first attorney did not file an entry of appearance nor, according to D.J., any documents on his behalf. She failed to oppose P.C.'s motion for summary judgment.
[6] See 25 U.S.C. § 1903(6) ("`Indian custodian' means any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such child.").
[7] Subsection 1912(d) provides:

Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
[8] See Sosa v. State, 4 P.3d 951, 953 (Alaska 2000); Moreau v. State, 588 P.2d 275, 279 (Alaska 1978).
[9] Sosa, 4 P.3d at 953 (quoting Broeckel v. State, Dep't of Corrections, 941 P.2d 893, 897 (Alaska 1997)).
[10] See Lane v. City of Kotzebue, 982 P.2d 1270, 1272 (Alaska 1999).
[11] Bishop v. Municipality of Anchorage, 899 P.2d 149, 153 (Alaska 1995) (citations omitted).
[12] See Walt v. State, 751 P.2d 1345, 1355 (Alaska 1988).
[13] See Bishop, 899 P.2d at 153.
[14] See J.W. v. R.J., 951 P.2d 1206, 1209 (Alaska 1998).
[15] Id. (quoting Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).
[16] See Sosa, 4 P.3d at 953; Moreau, 588 P.2d at 279.
[17] D.J.'s March 2001 brief asserts, but does not cite any evidence in the record to support, that D.J. is "not up for parole for three years."
[18] See French v. Jadon, Inc., 911 P.2d 20, 23 (Alaska 1996).
[19] See id.
[20] McGlothlin v. Municipality of Anchorage, 991 P.2d 1273, 1277 (Alaska 1999) (quoting Jennings v. State, 566 P.2d 1304, 1309 (Alaska 1977)).
[21] Id.
[22] Id.
[23] See AS 25.23.180(c)(2).
[24] See 25 U.S.C. § 1903(6).
[25] See J.W. v. R.J., 951 P.2d 1206, 1213 (Alaska 1998).
[26] "Legal custody" refers to the responsibility for making "major decisions affecting the child's welfare" and is a status that may be held by a parent who does not have "physical custody," which refers to the responsibility for physical care and immediate supervision of the child. Bennett v. Bennett, 6 P.3d 724, 726 (Alaska 2000).
[27] See Sosa, 4 P.3d at 954 ("Where a statute's meaning appears clear and unambiguous, ... the party asserting a different meaning bears a correspondingly heavy burden of demonstrating contrary legislative intent.") (quoting University of Alaska v. Tumeo, 933 P.2d 1147, 1152 (Alaska 1997)).
[28] See 25 U.S.C. § 1903(4) ("`Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.").
[29] See 25 U.S.C. § 1903(1)(ii) ("`[C]hild custody proceeding' shall mean and include ... `termination of parental rights' which shall mean any action resulting in the termination of the parent-child relationship.").
[30] We also note that P.C. gave written notice to the tribes of both the mother and father of the adoption petition, informing the tribes of their right to intervene and to petition for transfer to a tribal court. Each notice cited ICWA.
[31] Moreover, we are not inclined to find waiver in circumstances such as these, where D.J.'s first attorney allegedly failed to file a single document on his behalf and did not even file an entry of appearance. D.J. attempted to file pleadings on his own behalf but they were rejected because he was technically represented by counsel. D.J. was appointed another attorney fourteen days before his response to P.C.'s summary judgment motion was due. Two days before D.J.'s response was due his second attorney had not been able to communicate with D.J. due to restrictions on telephone contact with prisoners. Waiver is "generally defined as `the intentional relinquishment of a known right.'" Miscovich v. Tryck, 875 P.2d 1293, 1301 (Alaska 1994) (quoting Milne v. Anderson, 576 P.2d 109, 112 (Alaska 1978)). It is difficult to discern the intentional relinquishment of a known right in the instant case.
[32] 951 P.2d 1206 (Alaska 1998).
[33] Id. at 1208.
[34] Id. at 1211; 25 U.S.C. § 1912(e) ("No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.").
[35] J.W., 951 P.2d at 1211-12.
[36] Id. at 1214.
[37] Id. at 1215.
[38] Subsection 1912(f) provides:

No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.
[39] 951 P.2d at 1215.
[40] Id. at 1212; see also H.R.Rep. No. 95-1386, at 8 (1978); Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 37, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989); A.B.M. v. M.H., 651 P.2d 1170, 1172 (Alaska 1982).
[41] 951 P.2d at 1215.
[42] 25 U.S.C. § 1903(1)(i).
[43] 951 P.2d at 1215.
[44] Because each disputant in a given case involving § 1912(e) might enjoy one (and only one) of the custodial rights (either legal custody or physical custody), neither (or both) of the disputants would be favored by the status quo. Subsection 1912(e) deals with foster care placement; a parent with legal but no physical custody may have "continued custody," but foster care placement will not necessarily interfere with whatever legal custodial rights he or she may have. Subsection 1912(f) is fundamentally different, despite its parallel construction, because termination of parental rights necessarily cuts off whatever rights of "continuing custody" the parent has.
[45] Id; see also 25 U.S.C. § 1921.
[46] 951 P.2d at 1215.
[47] See supra, note 26.
[48] 651 P.2d 1170, 1173 (Alaska 1982).
[49] See 25 U.S.C. § 1903(1).
[50] A.B.M., 651 P.2d at 1173.
[51] Id. at 1171-72.
[52] Subsection 1912(d) provides:

Any party seeking to effect a foster care placement of, or termination of parental rights to, an Indian child under State law shall satisfy the court that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.
[53] See A.A. v. State, DFYS, 982 P.2d 256, 261 (Alaska 1999).
[54] See A.M. v. State, DFYS, 891 P.2d 815, 827 (Alaska 1995).
[1] 951 P.2d 1206 (Alaska 1998).
[2] 25 U.S.C. § 1903(6).
[3] Id.
[4] See 25 U.S.C. § 1903(4).
[5] 951 P.2d at 1214-15.
[6] Compare 25 U.S.C. § 1912(e) ("No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.") with 25 U.S.C. § 1912(f) ("No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.").
[7] Op. at 671.
[8] Op. at 671-72.
[9] 951 P.2d at 1215.
[10] Id. at 1211.
[11] See id. at 1215 n. 17 ("It is not inconsistent to apply the state law parental preference here, because we are simply reading the § 1912(e) standard to be inapplicable; ICWA does not clearly express a policy that forbids the state from applying a preference for the claim of the biological parent whose rights have not been terminated by the child's tribe."). ICWA gives parents and Indian custodians custodial protections in addition to those contained in state law: It requires proof of clear and convincing evidence that continued custody by a parent or Indian custodian would likely result in harm to the child.
[12] Id. at 1214.
[13] Op. at 671-72.
[14] Op. at 671 (quoting 25 U.S.C. § 1903(1)(i)).
[15] 25 U.S.C. § 1912(e) & (f).
[16] Op. at 672. See also In re Adoption of a Child of Indian Heritage, 111 N.J. 155, 543 A.2d 925, 937 (1988) (refusing to limit ICWA to cover only parents who have had actual physical custody of an Indian child); J.W., 951 P.2d at 1213 (and the cases cited therein) (holding that ICWA refers to legal rather than actual physical custody).
[17] 951 P.2d at 1209, 1213.
[18] The majority asserts that "[i]t is highly unlikely that Congress intended `Indian custodian' as used in § 1912(f) to refer to the party petitioning for termination." Op. at 673. No attempt is made to explain why this statement would not also apply to § 1912(e), in contradiction to the holding in J.W. If the court intends to overrule J.W. to some extent, it should state this clearly.
[19] 951 P.2d at 1215.
[20] 25 U.S.C. § 1912(f) (emphasis added); see also In re S.A.M., 703 S.W.2d 603, 607 (Mo.App. 1986) ("If it be assumed, arguendo, that appellant has acknowledged paternity and thus is a `parent,' the instant facts would not support the determination required by § 1912(f) for the obvious reason that appellant has never had custody of S.A.M., so it would be impossible for appellant's custody to `continue.'").
[21] 25 U.S.C. § 1902.
[22] A natural parent will always have legal custody of a child absent legal termination of those rights. See In re Adoption of K.S., 543 P.2d 1191, 1194 (Alaska 1975). The parental rights adjudicated under ICWA always involve legal rights. J.W., 951 P.2d at 1213. Therefore, J.W. specifically addresses physical custody as the central determinant in the applicability of ICWA to a dispute between a parent and an Indian custodian because a dispute over legal custody is presumed. See 951 P.2d at 1215. Certain cases have interpreted the phrase "continued custody" as referring to legal rather than physical custody. See In re Adoption of a Child of Indian Heritage, 111 N.J. 155, 543 A.2d 925, 938 (1988); In re Adoption of Baade, 462 N.W.2d 485, 490 (S.D. 1990). This is correct to the extent that ICWA addresses the termination of physical custody. However, because legal custody always exists prior to an ICWA hearing to terminate legal custody, the use of the word "continued" would be superfluous were it not to apply to some sort of pre-existing physical or emotional bond between parent and child.
[23] 951 P.2d at 1214-15.
[24] 25 U.S.C. § 1902.
[25] 951 P.2d at 1215 (citing 25 U.S.C. § 1921 (stating that the higher standard of protection between federal and state law is the applicable one)).
[26] 231 Kan. 199, 643 P.2d 168, 174, 176 (1982).
[27] Id. at 172, 175. This finding is different from the "preexisting Indian family" exception adopted in some states. That exception is applied to say that where the parent whose parental rights are in dispute does not have a strong connection to the Indian tribe or their customs, the parent cannot invoke the protections of ICWA. See In re Adoption of Baby Boy D., 742 P.2d 1059, 1064 (Okla.1985) (holding ICWA inapplicable where the child has never resided in an Indian family and has a non-Indian mother); Rye v. Weasel, 934 S.W.2d 257, 261-62 (Ky.1996) (holding that the "existing Indian family" exception was not judicially created but in fact reflected Congressional intent).

This court explicitly rejected the "existing Indian family" exception in In re Adoption of T.N.F., concluding that the doctrine undercuts the intention of Congress to protect Indian tribes. 781 P.2d 973, 977 (Alaska 1989) (citing Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 49, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989)). Other states concur with Alaska in its rejection of the "existing Indian family" exception. See, e.g., State ex rel. D.A.C., 933 P.2d 993, 1000-01 (Utah App.1997) (declining to adopt the "judicially-created" "existing Indian family" exception); In re Baby Boy Doe, 123 Idaho 464, 849 P.2d 925, 931 (1993) (concluding that Holyfield "effectively undermined" the application of the "existing Indian family" exception); In re Adoption of Baade, 462 N.W.2d 485, 489-90 (S.D.1990) (holding that Holyfield precludes a focus only on existing families and that ICWA applies as long as the child is an "Indian child").
I am not advocating either an overturn of In re Adoption of T.N.F. or the establishment of the "existing Indian family" exception in Alaska. Denial of the applicability of ICWA to D.J.'s claims neither requires nor creates the exception.
[28] 703 S.W.2d 603, 605, 607-09 (Mo.App.1986).
[29] In re Dougherty, 236 Mich.App. 240, 599 N.W.2d 772, 775 (1999). ICWA § 1903(1) specifically exempts divorce proceedings from the requirements laid out by the statute. In Dougherty, the two parents were in the process of getting a divorce, but it had not yet been finalized. However, the court did not use the logic of ICWA being inapplicable to custody disputes arising from divorce, so the holdings as to the parental deficiencies of the father are still applicable to the present case.
[30] Id.
[31] Id.
[32] Id.
[33] Even if this court applies ICWA to the present case, I question the conclusion in Part IV.B(2) that the requirements of ICWA were not met. First of all, it is not clear, in light of the statutory language of AS 47.10.086, that the State is required to provide the remedial services outlined in 25 U.S.C. § 1912(d) to a parent who will be incarcerated for the remainder of the child's minority. Second, the majority's contention that the superior court contemplated only physical and not legal custody in its summary judgment motion against D.J. seems to ignore significant portions of the record to the contrary. Finally, it is possible to conclude that D.J. waived the expert testimony requirement in 25 U.S.C. § 1912(f) when he failed to object, though further inquiry would be necessary into the issue of whether or not D.J. had a reasonable opportunity to raise this objection. See In re Riva M., 235 Cal.App.3d 403, 286 Cal.Rptr. 592, 597-98 (1991) ("there is no hint from the statutory language or cases construing it that the procedural standards [in ICWA] are constitutionally compelled").