202 P.3d 971 (2009)
In re CUSTODY OF C.C.M., a minor child.
Jane and Michael Mecum, Appellants,
v.
State of Washington, Department of Social and Health Services, Steven M. Pomiak, Father, Stephanie J. Mecum, Mother, Respondents,
The Coquille Indian Tribe, Respondent-Intervenor.
No. 61724-9-I.
Court of Appeals of Washington, Division 1.
March 9, 2009.
*974 Yale Lewis, Law Office of Yale Lewis, Seattle, WA, for Appellants.
Robert Helland, Barbara H. McInvaille, Tacoma, WA, Melissa T. Cribbins, North Bend, OR, for Respondents.
Stephanie J. Mecum, San Diego, CA, pro se.
DWYER, A.C.J.
¶ 1 Jane and Michael Mecum and the Coquille Indian Tribe appeal from the decree denying the Mecums' nonparental custody petition, filed pursuant to chapter 26.10 RCW, seeking to obtain legal custody of their Indian granddaughter, C.C.M. The trial court awarded full custody to C.C.M.'s father, Steven Pomiak.
¶ 2 The Mecums and the Tribe, which intervened pursuant to the Indian Child Welfare Act (ICWA), 25 U.S.C. §§ 1901-63, contend that the decree is invalid because the Tribe did not receive proper notice of the proceeding. Under ICWA and state law, an Indian tribe has a right to receive notice of any custody proceeding involving an Indian child who is an enrolled member of the tribe. The deficiency resulting from a defective notice may be cured only if an interested tribe expressly waives its right to intervene or later intervenes and has the opportunity to fully participate in the custody proceeding. Because the Coquille Tribe did not receive proper notice, did not expressly waive its right to intervene, and was not allowed to fully participate in the trial, the proceedings below are invalid and the case must be remanded for a new trial.
¶ 3 The Mecums also claim both that ICWA requires C.C.M. to be placed according to her "best interests," and that the standards set forth in ICWA, rather than state law, govern this dispute. The Mecums contend that because Mr. Mecum is C.C.M.'s Indian custodian, he has an equal right to custody of C.C.M. under ICWA as does Pomiak. We disagree. Generally, ICWA applies to custody proceedings involving Indian children, but it explicitly does not employ a "best interests" standard in this type of proceeding, which qualifies as an action for foster care placement under ICWA. Instead, the party seeking to remove a child from the custody of either a parent or an Indian custodian must show by clear and convincing evidence that the parent or custodian's continued custody is likely to result in serious physical or emotional harm to the child. 25 U.S.C. § 1912(e). In so requiring, ICWA does not state a preference for custody by an *975 Indian custodian or a parent. Thus, resolution of a custody dispute between such coequal parties is impossible without impinging on the losing party's mutually equivalent right to custody.
¶ 4 However, ICWA itself provides a solution to this problem. The Act mandates that when either a state or a federal law affords greater protection for either a parent or a custodian, the more protective law shall apply. 25 U.S.C. § 1921. Here, Washington law accords a clear preference for parental custody. Accordingly, we hold that state law, not ICWA, supplies the substantive legal standards governing this nonparental custody dispute between an Indian custodian and a parent. In addition, because a parent's interests in the custody and care of his or her children at stake in a nonparental custody action under chapter 26.10 RCW are equivalent to those implicated in termination and dependency proceedings, we hold that the Mecums must make their case by clear and convincing evidence.

I
¶ 5 In February 2002, Jane and Michael Mecum petitioned under chapter 26.10 RCW for custody of their granddaughter, C.C.M. C.C.M had lived with them in Renton, Washington, since her birth in April 2000. She is an enrolled member of the Coquille Indian Tribe through her grandfather's heritage. The Mecums alleged that C.C.M.'s unmarried mother and father, Stephanie Spencer (formerly Mecum) and Steven Pomiak, had abandoned her and that they were unsuitable parents.
¶ 6 The Mecums subsequently obtained temporary custody of C.C.M. under a series of orders issued in early 2002. Later that fall, the Mecums and Spencer entered into a Civil Rule (CR) 2A agreement granting visitation rights to Spencer. Meanwhile, the trial court entered a default order against Pomiak because he failed to timely file a parenting plan. It awarded custody to the Mecums. Pomiak appealed.
¶ 7 In 2003, we reversed and vacated the trial court's rulings against Pomiak and remanded the case for further proceedings. Mecum v. Pomiak, 119 Wash.App. 415, 422, 81 P.3d 154 (2003). Thereafter, Pomiak traveled with increasing frequency from his home in San Diego to visit C.C.M. in Renton. Spencer later moved to San Diego as well. Although they never married, both parents visited C.C.M. together.
¶ 8 In November 2007, the Mecums and Pomiak finally proceeded to trial. Neither Spencer nor the Coquille Indian Tribe participated. After three days of testimony, the court denied the Mecums' petition. It concluded that, under the standard for nonparental custody petitions announced in In re Custody of Shields, 157 Wash.2d 126, 136 P.3d 117 (2006), the Mecums failed to demonstrate either that Pomiak was unfit or that his custody of C.C.M. posed an actual detriment to C.C.M.'s growth and development. Although determining to grant custody of C.C.M. to Pomiak, in order to ease C.C.M.'s transition to living permanently with her father in San Diego, the court deferred entry of the decree and directed the parties to coordinate an accelerated visitation schedule.
¶ 9 In March 2008, four months after the trial ended, the Tribe intervened. The Tribe asserted that it had not intervened earlier because it had not received proper notice of the proceedings. The Mecums did not identify C.C.M. as an Indian child in their original petition, but they informed the trial court in their trial brief of her Indian status and stated that the Coquille Tribe had declined to intervene. In 2004, the Mecums had contacted the Tribe to determine whether it would intervene. One of the Tribe's social workers responded in the negative. It is undisputed, however, that the Tribe did not receive notice by registered mail, as both ICWA and Washington law require.
¶ 10 After the Tribe intervened, another one of its social workers evaluated the Mecum and Pomiak homes. She recommended in a written report that C.C.M. remain with the Mecums. The Tribe then moved to present her live testimony. However, the trial court denied this motion on the ground that the Tribe, as an intervenor, was limited to providing "input" in the form of the social worker's written report.
*976 ¶ 11 In May 2008, the trial court entered a decree awarding full custody of C.C.M. to Pomiak. In its written findings of fact and conclusions of law, the trial court concluded that C.C.M. was an Indian child and that ICWA applied, but that Shields nevertheless governed. Even in light of the social worker's report, the court concluded that the evidence did not demonstrate either that Pomiak was unfit to parent or that his custody of C.C.M. posed an actual detriment to her growth and development.
¶ 12 The court also entered a judgment for back child support in the amounts of $14,000 against Pomiak and $23,000 against Spencer. The judgment, however, does not contain an attached worksheet reflecting support calculations. Nor does it account for the interest of the Washington Division of Child Support (DCS) in unpaid support installments stemming from an April 16, 2001, California court order that set Pomiak's monthly support obligation at $212.
¶ 13 The Mecums and the Tribe now appeal from the custody decree. They contend that the proceedings below are invalid because the Tribe did not receive proper notice, as required by ICWA and Washington law, and that the Tribe's limited intervention did not cure the defective notice. The Mecums separately assert that the trial court erred by applying the Shields unfitness/actual detriment standard and that, because Mr. Mecum is C.C.M.'s "Indian custodian," the trial court should have placed her according to her best interests. The Mecums further contend that the trial court erred in entering the judgment for back child support against Pomiak. Both the Mecums and Pomiak request an award of attorney fees.

II
¶ 14 Before resolving the issue of the adequacy of the notice given to the Tribe, we must first address the threshold question of whether ICWA applies in this dispute. The trial court concluded that ICWA does apply because C.C.M. is an Indian child. Issues concerning ICWA's applicability are questions of law that we review de novo. In re Dependency of A.L.W., 108 Wash.App. 664, 669, 32 P.3d 297 (2001).
¶ 15 ICWA applies to child custody proceedings involving Indian children. In re Adoption of M., 66 Wash.App. 475, 478, 832 P.2d 518 (1992). Any unmarried person who is younger than 18 years of age and is an enrolled member of a recognized Indian tribe is an Indian child. 25 U.S.C. § 1903(4). The trial court found that C.C.M. is an enrolled member of the Coquille Indian Tribe, a federally recognized tribe. Because no party has assigned error to this finding, we treat it as a verity on appeal. State v. O'Neill, 148 Wash.2d 564, 571, 62 P.3d 489 (2003). Thus, we accept that C.C.M. is an Indian child.
¶ 16 C.C.M.'s status as an Indian child triggers the application of ICWA pursuant to RCW 26.10.034. But that section does not specify which particular provisions of ICWA are applicable. Thus, we must determine what kind of ICWA child custody proceeding the Mecums initiated when they filed their petition.
¶ 17 ICWA governs four types of custody proceedings: (1) foster care placement; (2) termination of parental rights; (3) preadoptive placement; and (4) adoptive placement. 25 U.S.C. § 1903(1). The Act broadly defines foster care placement as any action that could or does remove "an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where the parental rights have not been terminated." 25 U.S.C. § 1903(1)(i). This case is indistinguishable from other cases in which Washington courts have treated grandparents' nonparental custody petitions as actions for foster care placement under ICWA. See In re Interest of Mahaney, 146 Wash.2d 878, 889, 51 P.3d 776 (2002); In re S.B.R., 43 Wash.App. 622, 625, 719 P.2d 154 (1986); accord J.W. v. R.J., 951 P.2d 1206, 1213 (Alaska 1998); In re Custody of A.K.H., 502 N.W.2d 790, 793 (Minn.Ct.App.1993). Were the Mecums to be granted the relief they seek in their petition, C.C.M. would be "not returnable to [Pomiak] on demand." Mahaney, 146 Wash.2d at 889, 51 P.3d 776. Indeed, the Mecums seek to divest Pomiak of *977 his legal right to custody, which ICWA protects. See D.J. v. P.C., 36 P.3d 663, 670 (Alaska 2001); J.W., 951 P.2d at 1213; In re Welfare of W.R. & A.R., 379 N.W.2d 544, 549 (Minn.Ct.App.1985); In re Adoption of a Child of Indian Heritage, 111 N.J. 155, 181, 543 A.2d 925 (1988); In re Adoption of Baade, 462 N.W.2d 485, 490 (S.D.1990). Accordingly, we conclude that the Mecums' petition qualifies as an action for foster care placement under ICWA.

III
¶ 18 We now turn to the issue of notice to the Tribe. In 1978, when Congress enacted ICWA, it recognized that tribes have a special interest in Indian children: "[T]here is no resource that is more vital to the continued existence and integrity of Indian tribes than their children." 25 U.S.C. § 1901(3). Before ICWA's passage, state child welfare agencies removed Indian children from their birth families at disproportionately high rates as compared to non-Indian children, most often placing them in non-Indian settings. That practice endangered Indian culture, as it interfered with the "`transmission of [] tribal heritage'" to future generations of Indians. Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 34, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (quoting Hearings on S. 1214 before the Subcommittee on Indian Affairs and Public Lands of the House Committee on Interior and Insular Affairs, 95th Cong., 2d Sess., at 193 (1978)). Congress sought to counteract that trend and to "promote the stability and security of Indian tribes and families" by establishing minimum substantive and procedural standards for the removal of Indian children from their families. 25 U.S.C. § 1902. See also In re Adoption of Crews, 118 Wash.2d 561, 567, 825 P.2d 305 (1992) (citing Holyfield, 490 U.S. at 32, 109 S.Ct. 1597).
¶ 19 Prominent among these procedural safeguards is the requirement that an interested tribe receive notice of a state court child custody proceeding. ICWA mandates that
[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of ... an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.
25 U.S.C. § 1912(a). Washington's nonparental custody statute has a parallel notice provision. See RCW 26.10.034(b). We have previously held that a trial court has an independent responsibility to ensure proper notice to an interested tribe. In re Dependency of T.L.G., 126 Wash.App. 181, 192, 108 P.3d 156 (2005). Further, an interested tribe may intervene at any point in a proceeding for the foster care placement of an Indian child. 25 U.S.C. § 1911(c). It is well-established that the failure to provide proper notice or to allow a tribe to intervene constitute grounds to invalidate the child custody proceeding. 25 U.S.C. § 1914; T.L.G., 126 Wash.App. at 192-93, 108 P.3d 156.
¶ 20 It is undisputed that the Tribe did not receive proper notice. Notice is critical to ensure that a tribe will have the opportunity to assert its rights independently of the other parties involved in the child custody proceeding. T.L.G., 126 Wash.App. at 191, 108 P.3d 156. Without notice, the Tribe's rights under ICWA are "meaningless," making remand necessary. T.L.G., 126 Wash.App. at 191, 108 P.3d 156 (citing In re Kahlen W., 233 Cal.App.3d 1414, 1421, 285 Cal.Rptr. 507 (1991)).
¶ 21 Pomiak maintains, however, that the lack of proper notice is not fatal to the decree. We have recognized that flawed notice may not require remand when a tribe "`has participated in the proceedings or expressly indicated that it has no interests in the proceedings.'" In re Dependency of E.S., 92 Wash.App. 762, 771, 964 P.2d 404 (1998) (quoting In re Welfare of M.S.S., 86 Wash.App. 127, 134, 936 P.2d 36 (1997)). Pomiak contends both that the Tribe waived its rights and that its later intervention cured the defective notice. We disagree.
¶ 22 Contrary to Pomiak's assertion, we may not infer that the Tribe expressly *978 waived its right to intervene in 2004 when its social worker declined involvement. As the Alaska Supreme Court has held, only an individual or body authorized to take a legally binding position on behalf of a tribe may waive a tribe's rights under ICWA. In re J.M., 718 P.2d 150, 154 (Alaska 1986). Because nothing in the record indicates that the social worker was so authorized, we cannot conclude that the Tribe expressly waived its right to intervene.
¶ 23 Nor did the Tribe's limited intervention cure the problem of defective notice. Because tribes have independent interests in Indian children, they "must be allowed to participate in hearings in which [the values protected by ICWA] are significantly implicated." S.B.R., 43 Wash.App. at 626, 719 P.2d 154. In light of the relatively small size of the Coquille Tribe[1] and ICWA's policy goals, the Tribe has an understandably strong, independent interest in this matter. It must be allowed to fully participate. Further, an intervening party has the right to participate in the principal action to the same extent as the original parties. Dumas v. Gagner, 137 Wash.2d 268, 295 n. 98, 971 P.2d 17 (1999) (citing 3A LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE 612 (4th ed.1992)). Although the Tribe was allowed to introduce the social worker's report into evidence, it did not have the opportunity to examine witnesses. Therefore, it did not enjoy the same right of participation as the original parties, making its intervention inadequate to cure the defective notice. Accordingly, remand for a new trial is required.

IV
¶ 24 Also before us is the issue of what legal standard the trial court should apply on remand. That, too, is a question of law that we review de novo. In re Dependency of T.L.G., 139 Wash.App. 1, 16, 156 P.3d 222 (2007). The Mecums assert that the trial court should place C.C.M. according to her "best interests." We disagree.
¶ 25 ICWA does not require that courts place Indian children involved in involuntary custody proceedings according to their best interests. On the contrary, the Act requires much more than a showing that it would be in a child's best interest to be removed from a parent's custody in an action for foster care placement. ICWA requires a showing by clear and convincing evidence that "continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 U.S.C. § 1912(e). The Bureau of Indian Affairs' (BIA) GUIDELINES FOR STATE COURTS; INDIAN CHILD CUSTODY PROCEEDINGS, 44 Fed. Reg. 67,584 (Nov. 26, 1979), further buttress the conclusion that "best interests" is not the governing standard in proceedings for foster care placement. There, the BIA explained that "[a] child may not be removed simply because there is someone else willing to raise the child who is likely to do a better job or that it would be `in the bests interests of the child' for him or her to live with someone else." 44 Fed.Reg. at 67,593. Accordingly, we reject the Mecums' contention that ICWA requires the trial court to place C.C.M. according to her best interests.
¶ 26 The Mecums also argue that because Mr. Mecum is C.C.M.'s Indian custodian, he possesses the same right to custody of C.C.M. as does her father. Again, we disagree.
¶ 27 An Indian custodian is "any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such child." 25 U.S.C. § 1903(6). The trial court did not make a finding concerning Mr. Mecum's alleged status as an Indian custodian. But the record indicates that he is. He testified that he is part Native American and has represented that he is an enrolled member of the Coquille Tribe. Pursuant to the series of orders issued after the Mecums filed their petition and the CR 2A agreement, he had physical custody of C.C.M. Hence, we accept *979 that Mr. Mecum is C.C.M.'s Indian custodian.
¶ 28 As an Indian custodian, Mr. Mecum enjoys favored status under ICWA. The Act refers to parents and Indian custodians in the same breath and extends the same rights and protections to parents and Indian custodians alike in a variety of contexts.[2] In an action for foster care placement such as that herein, ICWA expresses no preference for placement of an Indian child with a parent over an Indian custodian, or vice versa, making it problematic to adjudicate the rights of the coequal parties. Because ICWA applies reciprocally between a parent and Indian custodian, the enforcement of one party's rights necessarily jeopardizes those of the other.
¶ 29 Whether ICWA supplies the governing legal standard in a nonparental custody dispute between parties who are coequals under ICWA is a matter of first impression in Washington. In resolving this issue, we find persuasive the Alaska Supreme Court's reasoning in J.W. v. R.J., 951 P.2d 1206 (Alaska 1998). There, the court held that state law, not ICWA, governed a nonparental custody dispute between a putative Indian custodian and a parent. The court restricted ICWA's application to "disputes between persons having favored status  parents and Indian custodians  and others who are neither parents nor Indian custodians" because the Act does not express a preference for custodians or parents. J.W., 951 P.2d at 1215. Doing so was consistent with ICWA, the court reasoned, because the Act "does not clearly express a policy that forbids the state from applying a preference for the claim of the biological parent whose rights have not been terminated." J.W., 951 P.2d at 1215 n. 17.
¶ 30 In D.J. v. P.C., 36 P.3d 663 (Alaska 2001), the court subsequently expounded on its rationale for relying on state law in a contest between coequals under ICWA. There, it explained that whether a court awards custody to a parent or to an Indian custodian, it "would be effecting a removal of `an Indian child from its parent or Indian custodian' and so vindication of one party's rights would directly and proportionally impair the rights of the opposing party." D.J., 36 P.3d at 671-72 (quoting 25 U.S.C. § 1903(1)(i)). Because ICWA treats parents and Indian custodians equally, it is essentially rendered moot in disputes between them. D.J., 36 P.3d at 671 (citing J.W., 951 P.2d at 1215). The court further explained that its decision rested in part on ICWA's mandate under 25 U.S.C. section 1921 that when a state or federal law affords greater protection to a favored status party than does ICWA, "that law should be applied." D.J., 36 P.3d at 672. Since ICWA yielded no preference between an Indian custodian and a parent, whereas state law "provided higher standards" of protection for the parent's custody interests, the court concluded that state law should apply. D.J., 36 P.3d at 672.
¶ 31 For the same reasons, we hold that Washington law governs this custody dispute. Were section 1912(e) of ICWA to apply, respect for Mr. Mecum's rights would necessarily come at the expense of Pomiak's rights, and vice versa. Any award of custody in this situation would effect the removal of an Indian child from the custody of a party accorded favored status under ICWA. Such a scenario is at odds with ICWA's treatment of Indian custodians and parents as coequals.
¶ 32 Further, ICWA requires that when state or federal law affords more protection to a parent or to an Indian custodian than does ICWA, that law shall apply. 25 U.S.C. § 1921. A parent has a constitutionally protected right to the custody of his or her children. Troxel v. Granville, 530 U.S. 57, 63, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). The decision in Shields reflects a presumption in favor of parental custody. Under Shields, a nonparent may interfere with a parent's right to custody of his or her child *980 only by demonstrating either that the opposing parent is unfit or that placement with an otherwise fit parent would pose an actual detriment to the child's growth and development. 157 Wash.2d at 142-43, 136 P.3d 117. Because the Shields standard contains a preference for parental custody over nonparental custody it provides greater protection to the parent in this context than does ICWA. Accordingly, Shields sets forth the proper standard for resolution of these disputes.

V
¶ 33 We must also clarify the evidentiary standard the trial court should apply on remand. Chapter 26.10 RCW does not specify a nonparent's burden of proof. At trial, the court weighed the Mecums' claims according to a preponderance of the evidence standard.[3] Use of a different standard, however, is required.
¶ 34 The minimum evidentiary standard to be applied to a particular claim "is based upon the nature of the interest at stake  the interest which is subject to erroneous deprivation if a mistake is made." Bang D. Nguyen v. Dep't of Health, Med. Qual. Assur. Comm'n, 144 Wash.2d 516, 523-24, 29 P.3d 689 (2001). The applicable evidentiary standard reflects the degree of certainty that the trier of fact must have about the accuracy of its factual conclusions in a specific adjudication. Nguyen, 144 Wash.2d at 524, 29 P.3d 689 (quoting Addington v. Texas, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979)). "Thus, the more important the decision, the higher the burden of proof." Nguyen, 144 Wash.2d at 524, 29 P.3d 689.
¶ 35 At the low end of the protective spectrum is the preponderance of the evidence standard traditionally used in civil actions for damages, in which litigants "`share the risk of error in roughly equal fashion'" because society has minimal interest in the outcome of these private disputes. Nguyen, 144 Wash.2d at 524, 29 P.3d 689 (quoting Addington, 441 U.S. at 423, 99 S.Ct. 1804). At the high end is the beyond-a-reasonable-doubt standard applied in criminal cases, in which the accused's and society's interests in avoiding wrongful convictions is so great that the standard of proof is "`designed to exclude as nearly as possible the likelihood of an erroneous judgment.'" Nguyen, 144 Wash.2d at 524, 29 P.3d 689 (quoting Addington, 441 U.S. at 423, 99 S.Ct. 1804). When the interests at stake in a lawsuit are more significant than a money judgment but less consequential than a deprivation of individual liberty, courts must apply an intermediate evidentiary standard that requires "`clear,' `cogent,' `unequivocal,' and/or `convincing'" proof. Nguyen, 144 Wash.2d at 524-25, 29 P.3d 689 (quoting Addington, 441 U.S. at 424, 99 S.Ct. 1804).[4] Keeping in mind this proportional relationship between the gravity of the interest at stake and the stringency of the evidentiary burden, we consider the nature of Pomiak's interest in the custody of C.C.M. at stake herein.
¶ 36 "Parents have a constitutional right to the custody, care, and control of their children." In re Custody of A.C., Wash. ___, 200 P.3d 689, 693 (Wash.2009) (J.M. Johnson, J. concurring). Pomiak, as a natural parent, has a fundamental liberty interest in his custody and care of C.C.M. In re Custody of Smith, 137 Wash.2d 1, 13-14, 969 P.2d 21 (1998), aff'd sub nom., Troxel, 530 U.S. 57, 120 S.Ct. 2054; accord Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Accordingly, we must "take into consideration ... [his] constitutionally protected priority right to" custody of C.C.M. Mecum, 119 Wash.App. at 419, 81 P.3d 154 (citing In re Custody of Nunn, 103 Wash.App. 871, 883-84, 14 P.3d 175 (2000)).
¶ 37 A natural parent's custody interests are so important that a court may *981 award custody to a nonparent in only two very limited circumstances: if a parent is either unfit or if placement with that parent would result in actual detriment to the child. Under the detriment standard the nonparent has a heightened burden to establish that actual detriment to the child's growth and development will occur if the child is placed with the parent, consistent with the constitutional mandate of deference to parents in these circumstances.
Shields, 157 Wash.2d at 128, 136 P.3d 117. This burden is so substantial that, when properly applied, it will be met in only "`extraordinary circumstances.'" Shields, 157 Wash.2d at 145, 136 P.3d 117 (quoting In re Marriage of Allen, 28 Wash.App. 637, 649, 626 P.2d 16 (1981)). As was recognized long ago, "that [a child] might be better educated, and better clothed, and have a more pleasant home with some one else than the parent can have no weight with the court as against the natural rights of the parent." In re Neff, 20 Wash. 652, 655, 56 P. 383 (1899). A nonparent's capacity to provide a superior home environment to that which a parent can offer is not enough to outweigh the deference that is constitutionally owed to a natural, fit parent. Shields, 157 Wash.2d at 144, 136 P.3d 117. Further, "the paramount goal of child welfare legislation is to reunite the child with his or her legal parents, if reasonably possible." In re Dependency of J.H., 117 Wash.2d 460, 476, 815 P.2d 1380 (1991).
¶ 38 In light of the strong preference for parental custody, we also consider the consequences of a decree awarding custody to a nonparent. Such an award confers on the nonparental custodian the legal power to "determine the child's upbringing" to the exclusion of the natural parent. RCW 26.10.170. A nonparental custody decree is also permanent, as it may be modified only if the conditions of the child or the nonmoving party change. RCW 26.10.190 (incorporating standards of RCW 26.09.260). An award of custody to a nonparent is unlike the placement of a child with one parent in a dissolution proceeding, where the child is properly placed according to his or her best interests as determined by a preponderance of the evidence. The least stringent evidentiary standard is appropriate there because chapter 26.09 RCW is designed to facilitate a placement choice between equals  the natural parents. In a custody dispute between parents and nonparents, however, the analysis must accommodate the natural parents' constitutionally protected priority right to the custody of their children. Mecum, 119 Wash.App. at 419, 81 P.3d 154 (citing Nunn, 103 Wash.App. at 883-84, 14 P.3d 175). The general constitutional rule of "respect for family integrity" demands a substantive showing in a nonparental custody action of far more than a child's best interests. A.C., ___ Wash. ___, 200 P.3d at 694 (J.M. Johnson, J., concurring). Likewise, because of the severe consequences of an erroneous deprivation of a parent's custody rights, courts must apply a more rigorous standard of proof in resolving nonparental custody petitions than is applied when placing children in dissolution proceedings. Therefore, we conclude that the nature of a parent's interests implicated in a nonparental custody action falls into the intermediate category of cases that, for resolution, require proof by clear and convincing evidence.
¶ 39 In reaching this conclusion, we take guidance from the standard of proof applied in termination and dependency actions. The interests implicated in nonparental custody actions are similar to those at issue in termination and dependency proceedings. Those actions may result in "an order permanently depriving a parent of the care, custody and control of his children." In re Sego, 82 Wash.2d 736, 739, 513 P.2d 831 (1973). The interests at stake there are more serious than those affected by judgments for damages. Accordingly, proof by clear and convincing evidence is required. In re Aschauer's Welfare, 93 Wash.2d 689, 695, 611 P.2d 1245 (1980) (dependency); Sego, 82 Wash.2d at 739, 513 P.2d 831 (termination).[5] As previously discussed, a natural parent subject to a nonparental custody petition under chapter 26.10 RCW risks permanent deprivation *982 of control over the custody and care of the parent's child. Accordingly, the intermediate evidentiary standard is required to properly protect the natural parent's interest.
¶ 140 In so holding, we are mindful of remarks in Shields and Allen that might appear to suggest that something less stringent than clear and convincing evidence is required in a nonparental custody action. See Shields, 157 Wash.2d at 143 n. 7, 136 P.3d 117 (noting that a custody determination is "a less drastic limitation on parental rights than the dependency or abuse and neglect situations involving parental unfitness determinations"); Allen, 28 Wash.App. at 647 n. 7, 626 P.2d 16 (noting that clear and convincing standard is required for a finding of parental unfitness because such a finding may result in a "permanent termination of parental rights," whereas "[c]ustody is less drastic a limitation on parental rights") (citing Aschauer, 93 Wash.2d 689, 611 P.2d 1245; Sego 82 Wash.2d 736, 513 P.2d 831; In re Sumey, 94 Wash.2d 757, 763, 621 P.2d 108 (1980)). In neither of those cases, however, did the court confront the issue of the appropriate evidentiary standard, as we do here. There is no principled distinction between the core custody interests at stake in a nonparental custody action and a termination or dependency proceeding. That there may be other interests implicated in dependency or termination proceedings that also enjoy protection under the intermediate standard of proof does not permit a court to relegate the custody interests at risk in a nonparental custody petition to a less rigorous evidentiary standard. The equivalency of the overlapping interests involved inexorably leads to the conclusion that the same evidentiary standard  clear and convincing evidence  is required in each type of case. Accordingly, we hold that the Mecums, in order to prevail on remand, must prove by clear and convincing evidence either that Pomiak is unfit or that placement of C.C.M. with him would pose an actual detriment to her growth and development.[6]

VI
¶ 41 The Mecums also challenge the back child support judgment. We review a support award for abuse of discretion. In re Marriage of Peterson, 80 Wash.App. 148, 152-53, 906 P.2d 1009 (1995). After such review, we find errors in the judgment that warrant reversal and, accordingly, remand.
¶ 42 In a nonparental custody action, the trial court determines back child support based on the child support schedule and the standards adopted under chapter 26.19 RCW. RCW 26.10.045. Worksheets used to calculate support "shall be attached to the decree or order or if filed separately shall be initialed or signed by the judge and filed with the order." RCW 26.19.035(4). "There are no exceptions" to this rule. In re Marriage of Sievers, 78 Wash.App. 287, 305, 897 P.2d 388 (1995). Here, the trial court did not initial or attach a worksheet, making it impossible for us to review the accuracy of the support award. Therefore, remand is required. Sievers, 78 Wash.App. at 306, 897 P.2d 388.
¶ 43 Nor does the judgment clearly account for DCS's interest in unpaid support installments under the April 16, 2001, California court order, which set Pomiak's monthly support obligation at $212. Each installment under that order is a separate, vested judgment and bears interest from its due date. In re Marriage of Abercrombie, 105 Wash.App. 239, 243, 19 P.3d 1056 (2001) (citing Kruger v. Kruger, 37 Wash.App. 329, 332, 679 P.2d 961 (1984)); Valley v. Selfridge, 30 Wash.App. 908, 913, 639 P.2d 225 (1982); Mathews v. Mathews, 1 Wash.App. 838, 842, 466 P.2d 208 (1970). Pomiak paid only $2,500 to DCS during the eight-year period in which the Mecums cared for C.C.M, and the judgment reduces Pomiak's future monthly payments to $100. A court may modify support payments only when special circumstances justify an exception and such a modification does not result in an injustice to the other party. In re Marriage of Schumacher, *983 100 Wash.App. 208, 212, 997 P.2d 399 (2000) (citing Mathews, 1 Wash.App. at 843, 466 P.2d 208). Given the state of the record on appeal, we cannot determine whether the court accounted for unpaid installments or DCS's interest when it set Pomiak's total and monthly obligations. Any support award on remand must do so.
¶ 44 In addition, the scope of Pomiak's and Spencer's liability is ambiguous under the terms of the order entered at trial. The trial court struck language assigning joint and several liability in one section of the judgment but not in another. Because "child support obligation[s] should be equitably apportioned between the parents," an individual parent may not be held liable for both parents' total obligation. RCW 26.19.001. The judgment on remand should clarify that each parent is individually responsible for his or her share, as determined in accordance with the support schedule.

VII
¶ 45 Finally, the Mecums and Pomiak have each requested an award of attorney fees on appeal. Under RAP 18.1(c), a party requesting fees must file an affidavit of financial need with this court in support of any request for a fee award. The parties have not done so. Accordingly, we decline to award fees to either party.
¶ 46 We reverse, vacate the decree, and remand this matter for proceedings consistent with this opinion.
WE CONCUR: ELLINGTON and COX, JJ.
NOTES
[1] The Tribe's counsel represented at oral argument that there are currently 867 members of the Coquille Tribe.
[2] See, e.g., 25 U.S.C. § 1911(c) (granting Indian custodians the right to intervene in child custody proceedings); 25 U.S.C. § 1912(a) (requiring notice be given to parents and Indian custodians in child custody proceedings); 25 U.S.C. § 1912(e), (f) (affording same substantive protections to parents and Indian custodians in proceedings for foster care placement and termination of parental rights); 25 U.S.C. § 1914 (granting parents and Indian custodians alike the right to petition a court to invalidate child custody proceedings in violation of ICWA).
[3] At the May 2008 hearing, the court remarked that "[t]hese petitioners couldn't make their case on the lowest possible burden of proof, which is preponderance of the evidence."
[4] Examples of cases in which the intermediate standard of clear and convincing evidence is required include civil commitment, defamation, and medical disciplinary proceedings. Nguyen, 144 Wash.2d at 525, 29 P.3d 689.
[5] We also note that ICWA requires clear and convincing evidence of harm to an Indian child before a court may order foster care placement. 25 U.S.C. § 1912(e).
[6] Because we remand this matter for a new trial, we need not address the Mecums' contention that they introduced sufficient evidence at the first trial to prove that Pomiak is unfit and that his custody poses an actual detriment to C.C.M. Nor need we address the Mecums' and Pomiak's cross-motions to supplement the record with additional evidence.