# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re Dependency of G.B., T.B., K.B.

STATE OF WASHINGTON,

Respondent,

v.

C.F.,

Appellant.

No. 77311-9-I

(consolidated with
nos. 77312-7-I and 77313-5-I)

DIVISION ONE

UNPUBLISHED OPINION

FILED: November 5, 2018

APPELWICK, C.J. — C.F. appeals orders establishing dependency for her three children and placing them in the care of others. She argues that the trial court abused its discretion in denying her motion for recusal. She also contends that the Department of Social and Health Services and the trial court failed to comply with the notice requirements of the Indian Child Welfare Act, 25 U.S.C. § 1912 (ICWA). We affirm.

## FACTS

C.F. is the mother of daughter K.B., son G.B., and son T.B. G.B. Sr. is the presumed father of G.B. and T.B., and the alleged father of K.B. The Department of Social and Health Services (DSHS) filed dependency petitions under RCW 13.34.030(6)(b), alleging that the children were neglected or abused. At the 72-hour shelter care hearing, the commissioner placed the children with their mother subject to conditions.

The social worker, who was transporting the children from their different placements to their mother's home, observed a bruise on G.B., and G.B.'s foster parent told the social worker that G.B. had shown him another bruise on his arm. The social worker took the children to Harborview Medical Center, where a physician examined all three children and determined that they had injuries consistent with suspected child abuse. DSHS filed a motion for an emergency hearing, seeking out-of-home placement. At the emergency hearing, the court ordered that the children be placed in shelter care.

In February 2017, C.F. moved for the court to place the children with their maternal aunt. DSHS opposed the motion. The court granted C.F.'s motion to place daughter K.B. with her aunt, but denied the motion as to sons G.B. and T.B.

In March 2017, C.F. filed a motion to return the children to her care, subject to the same conditions the court imposed in the original shelter care order. In support, C.F. attached a declaration from Dr. Steven Gabaeff, a clinical forensic medicine practitioner. DSHS opposed the motion, arguing that there was no change of circumstances warranting modification of the shelter care order. After a hearing, the court denied C.F.'s motion.

The dependency trial was assigned in King County Superior Court to Judge Darvas, the same judge who had denied C.F.'s motion to return the children to her care. The mother filed a motion in limine asking Judge Darvas to recuse herself based on the appearance of fairness doctrine. DSHS opposed the motion to recuse. After hearing argument on the motion to recuse, the court denied the

motion. Following a fact finding hearing, the trial court entered an order of dependency as to both parents. C.F. appeals.[1]

## DISCUSSION

C.F. makes three arguments. First, she argues that the court abused its discretion in denying her motion for recusal based on the appearance of fairness doctrine. Second, she argues that DSHS and the court violated the notice requirement of the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. §§ 1901-63. Third, she argues that some of the court's findings of fact are not supported by substantial evidence, although she concedes that the "erroneous findings" are not material to the outcome of the case.

I.  Motion to Recuse

C.F. asserts first that the trial court abused its discretion in denying her motion to recuse under the appearance of fairness doctrine.

This court reviews a trial judge's decision whether to recuse for abuse of discretion. State v. Perala, 132 Wn. App. 98, 111, 130 P.3d 852 (2006). A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds or reasons. Salas v. Hi-Tech Erectors, 168 Wn.2d 664, 668-69, 230 P.3d 583 (2010).

Pursuant to the appearance of fairness doctrine, a judicial proceeding is valid if a reasonably prudent, disinterested observer would conclude that the parties received a fair, impartial, and neutral hearing. State v. Solis-Diaz, 187 Wn.2d 535, 540, 387 P.3d 703 (2017). The law not only requires a judge to be

---

[1] The father did not appeal.

3

impartial, it also requires that the judge appear to be impartial. Id. The party asserting a violation of the appearance of fairness must show a judge's actual or potential bias. Id. The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes a reasonable observer knows and understands all the relevant facts. Id.

C.F. argues that Judge Darvas's impartiality in presiding over the dependency trial could reasonably be questioned based on her remarks and findings in denying C.F.'s motion to return the children to her care. She points to when, during the hearing on C.F.'s motion, the court stated that it was "absolutely clear" that the two boys had been "horribly traumatized while in their parents' care." And, she highlights when, in response to C.F.'s statement, "My babies are suffering out there," the court stated, "They were suffering when they were with you, though, that's the problem."

C.F. also draws attention to the court's determination that C.F.'s expert, Dr. Gabaeff, did not offer a credible opinion. C.F. asserts that, from a disinterested person's perspective, the record "show[s] a suspicion that the judge had already made up her mind on these issues that were of critical importance to the upcoming dependency trial." She also argues that, because the appellate court reviews dependency orders for abuse of discretion, it heightens the appearance of fairness concerns.

C.F. essentially asks this court to infer that, because the judge had made a pretrial ruling adverse to her interests, this detrimentally affected her ability to fairly preside over the dependency hearing. But, the trial court's impartiality could not

4

reasonably be questioned merely because the judge, in a previous hearing, made findings based on the evidence before her. The challenged statements reflect those facts. It is the sole province of the trier of fact to pass on the weight and credibility of evidence. Boeing Co. v. Heidy, 147 Wn.2d 78, 87, 51 P.3d 793 (2002). C.F. does not argue that any particular factual finding was the result of bias, but instead asserts that a "suspicion of partiality lingers here." The court was entitled to make evidentiary and credibility findings based on its observations, and the record does not reveal any instance suggesting that the judge developed a personal dislike for C.F. that resulted in bias or the appearance of unfairness. Because C.F. has not provided evidence of actual or potential bias of the judge towards her, the appearance of fairness claim fails. The trial court did not abuse its discretion in denying her motion to recuse.

## II. The Indian Child Welfare Act

C.F. argues second that, because DSHS and the trial court had reason to know that the children are possibly Indian children, they were required by the ICWA to notify the Cherokee tribes. Relying on In re Dependency of T.L.G., 126 Wn. App. 181, 108 P.3d 156 (2005), C.F. argues that the court has "reason to know" that a child is possibly an Indian child when a parent claims Indian ancestry with a federally recognized tribe, even though the parent does not claim membership.

The issue of whether the ICWA should apply to this proceeding did not present itself until the dependency trial. During the trial, when asked if he had any Native American ancestry, the father of the children, G.B. Sr., testified, "Yes, Cherokee on my father's side." He testified that he was not an enrolled member

5

of the Cherokee Tribe. And, when asked, he testified that he believed it was his grandfather who had Cherokee ancestry, but he did not know if his grandfather was an enrolled member. When asked if she had Native American ancestry, the mother testified, "Cherokee, my dad does but it's not a lot . . . just a little." And, C.F. testified that she was not an enrolled member. During closing, C.F. argued that, because both parents "testified to Native American ancestry," the trial court should apply the ICWA. DSHS argued that ICWA did not apply, based on the assertion of ancestry alone, and because both parents testified that they were not members of a tribe. In its findings and conclusions, the court found, "[T]he children are not Indian children as defined in RCW 13.38.040, and the federal and Washington State Indian Child Welfare Acts[, ch. 13.38 RCW (WICWA),] do not apply to these proceedings: The parents have Cherokee ancestry but neither they nor the children are members of an Indian tribe."

ICWA, which applies whenever an "'Indian child'" is the subject of a "'child custody proceeding,'" requires minimum federal standards for the removal of Indian children. In re Welfare of M.G., 148 Wn. App. 781, 786-87, 201 P.3d 354 (2009) (quoting 25 U.S.C. § 1903(1), (4)). In 2011, Washington enacted WICWA, its own version of the ICWA. In re Adoption of T.A.W., 186 Wn.2d 828, 842, 383 P.3d 492 (2016). WICWA and the federal ICWA are "interpreted as analogous and conterminous unless one provides greater protection, in which case the more protective act will supplant the less protective act." Id. at 844.

Like statutory interpretation, whether ICWA and WICWA apply is a question of law that we review de novo. Id. at 840.

6

Any party that files a dependency petition must state in the petition "whether the child is or may be an Indian child as defined in RCW 13.38.040." RCW 13.34.040(3). An "Indian child" is "an unmarried and unemancipated Indian person who is under eighteen years of age and is either: (a) A member of an Indian tribe; or (b) eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." RCW 13.38.040(7). The federal ICWA defines "Indian child" in a comparable manner. 25 U.S.C. § 1903(4). For the ICWA and the WICWA to apply, the "Indian child" must be a member of, or eligible for membership in, a federally recognized tribe. In re Welfare of L.N.B.-L., 157 Wn. App. 215, 241-42, 237 P.3d 944 (2010). The Cherokee Tribe is a federally recognized tribe. Id. at 239.

ICWA requires a party seeking foster care placement in an involuntary child custody proceeding to give notice of the proceeding to the child's tribe "where the court knows or has reason to know that an Indian child is involved." 25 U.S.C. § 1912(a); see also RCW 13.38.070(1) (requiring the party give notice when "the petitioning party or the court knows, or has reason to know, that the child is or may be an Indian child"). A trial court has an independent responsibility to ensure proper notice to an interested tribe. In re Custody of C.C.M., 149 Wn. App. 184, 197, 202 P.3d 971 (2009). The failure to provide proper notice or to allow a tribe to intervene constitute grounds to invalidate the child custody proceeding. Id.

In T.L.G., a termination of parental rights case, the mother informed DSHS that she "had been told her biological father was full-blooded Cherokee." 126 Wn. App. at 185-86. But, she did not challenge the assertion, in both the dependency

7

petition and the agreed dependency order, that the children were not Indian. Id. at 189. The mother testified that she was neither enrolled in a tribe nor a member of a tribe. Id. at 190. Neither DSHS nor the court provided notice to the tribe or to the Bureau of Indian Affairs (BIA). Id. On appeal of the order terminating parental rights, this court held that the mother's assertion of Cherokee heritage gave the court "reason to know," and, because the children were possibly Indian children, the court was required to notify the tribe or the BIA of the proceedings. Id. at 192, 185.

Here, no party asserted that the children were possibly Indian children until the dependency trial. The parents testified as to their ancestry, but acknowledged that they were not members of a tribe. The record therefore supported the trial court's finding, for purposes of the dependency order, that the children were not Indian children under RCW 13.38.040(7).

At oral argument on appeal, DSHS acknowledged that it has a duty to make good faith efforts to investigate whether the children are Indian children. Under RCW 13.38.050,

> Any party seeking the foster care placement of, termination of parental rights over, or the adoption of a child must make a good faith effort to determine whether the child is an Indian child. This shall be done by consultation with the child's parent or parents, any person who has custody of the child or with whom the child resides, and any other person that reasonably can be expected to have information regarding the child's possible membership or eligibility for membership in an Indian tribe to determine if the child is an Indian child, and by contacting any Indian tribe in which the child may be a member or may be eligible for membership. Preliminary contacts for the purpose of making a good faith effort to determine a child's possible Indian status, do not constitute legal notice as required by RCW 13.38.070.

After this appeal was filed, the State moved to supplement the record[2] with the inquiry letters that it sent to ascertain whether the children meet the statutory definition of "Indian children." The record now shows that DSHS sent inquiries to the three federally recognized Cherokee tribes, based on the ancestry evidence at trial. Two of the three tribes, the United Keetoowah Band of Cherokee Indians in Oklahoma and the Eastern Band of Cherokee Indians, responded that the children are not eligible to be tribal members. At the time that the State moved to supplement, the third tribe had not yet responded.

The State has made it clear that its inquiry process is ongoing. It does not dispute its duty to provide formal notice under ICWA and WICWA once it has reason to know a child is an Indian child. See RCW 13.38.070. It is premature to conclude at this time that the notice provisions of the ICWA and the WICWA have been formally triggered and that DSHS has failed to fulfill its notice obligation.

The State has invited us to decide whether there is a new standard for providing ICWA notice under the 2016 Federal regulations, and whether this case would follow that standard, even though the proceedings below began before the regulations became effective. 81 Fed. Reg. 38778, 38778 (June 14, 2016); 25 C.F.R. § 23.143. We decline the invitation to decide these issues.

III.    Findings of Fact

C.F. asserts third that some findings of fact are not supported by substantial evidence or are "improperly treated as substantive evidence." (Capitalization

---

[2] When asked at oral argument, C.F. did not object, and this court grants the motion to supplement the record.

omitted.) C.F. acknowledges that the findings "do not change the outcome," but states that she is challenging them "to ensure an accurate record."

Substantial evidence must support findings of fact. In re Dependency of C.M., 118 Wn. App. 643, 649, 78 P.3d 191 (2003). Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. State v. Hill, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

C.F. assigns error to the court's finding of fact 9.10(d)(2). In finding 9.10(d)(2) the court stated, "Ms. Falls also denied giving another statement to police regarding a different domestic violence incident in June of 2015, even though she admitted that the signature at the bottom of the statement was hers [sic] signature." DSHS agrees that the finding is erroneous, and it should be stricken from the record.

C.F. next challenges the court's findings based on testimony where the court overruled counsel's hearsay objections on the basis that the out-of-court statements were not being considered for the truth of the matter asserted. "Hearsay" is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. ER 801(c). C.F. asserts that there is not substantial evidence to support these findings, because the statements were not admitted for their truth.

C.F. argues that the court erroneously found in finding 9.1(e): "Ms. Reimer also testified that [G.B.] came to school one day and during a lineup for PE [physical education], he said 'Ow' and complained that his back hurt. When he

10

was asked what was wrong, he said that he had gotten a 'whooping.'" But, contrary to C.F.'s assertion, G.B.'s statement was considered not for the truth of the matter, but to explain the basis for Brenda Reimer's subsequent actions. Finding of fact 9.1(e) continues, "Since Ms. Reimer is a mandated reporter, and because [G.B.] said he had gotten hit with a cord, she took him into the counselor's office. [G.B.] showed the counselor his back, which had a red mark on it that was described as being about three inches long. CPS [(Child Protective Services)] was called, came to the school, and took a report." C.F.'s challenge to this finding fails.

C.F. next challenges finding 9.2(e). There, the court found, "Ms. [Kaitlin] Pifer called CPS quite a few times because she was mandated to do so whenever [G.B.] reported having been spanked or whipped at home. When [G.B.] would come back to school after such reports, he would tell her that he couldn't talk to her." The first sentence does not constitute hearsay. Instead, it explains why Pifer called CPS multiple times. The second sentence is not hearsay because the statement from G.B. is not offered for the truth of the matter asserted, which is whether G.B. could talk to her. See ER 801(c). This finding is not erroneous.

Lastly, C.F. challenges a portion[3] of finding 9.8(d)(2), which states,

> When Ms. [Desiree] Rollins reassured [G.B.] that she would never hit him and told him that it's never good for a boy to hit a woman, [G.B.] stated that he had heard his father say that women were good for only three things: cooking, cleaning, and fucking. Since the day Ms. Rollins had that conversation with [G.B.], he has not hit her or tried to hit her. However, [G.B.]'s behavior and statements led her to believe that [G.B.] has witnessed a lot of domestic violence.

---

[3] The portion that C.F. challenges is underlined.

The context of the challenged sentence makes it clear that the contested statement was not considered for the truth of the matter, but as a basis for Rollins's belief that G.B. has witnessed a lot of domestic violence. We do not strike the finding.

We affirm, but strike finding of fact 9.10(d)(2).

WE CONCUR: